[Cited in U. S. v. Jones, 32 Fed. 570.]

## Case No. 16,316a.

### UNITED STATES v. SMIDTH.

[N. Y. Times, Feb. 26, 1855.]

Circuit Court, S. D. New York. 1855.

#### CRIMINAL LAW—NEW TRIAL—SURPRISE.

[Where a criminal trial is conducted on both sides upon the assumption that a certain material fact, though not admitted, is to be taken as true, but the court in its charge expressly leaves the question of the existence of that fact to the jury, this is sufficient ground for granting a new trial, where the attorney for the defence claims that the court's action was a surprise to him, and that he would have offered evidence on the point in question had he known that the matter was to be considered as open to the jury.]

Capt. Smidth was convicted at the last term of this court of being employed in the African slave trade, on board the slave brig Julia Moulton. Heard on motion for a new trial.

Before NELSON. Circuit Justice, and BETTS, District Judge.

NELSON, Circuit Justice. The prisoner is indicted under the act of congress passed May 15, 1820 [3 Stat. 600], upon a charge of having been engaged in the slave trade, in violation of the provisions of that act. By its provisions, any citizen of the United States, being of the crew, or ship's company of any foreign ship engaged in the slave trade, or any person whatever, being of the crew or ship's company of any ship, owned in whole or in part, or navigated for, or in behalf of, any citizen or citizens of the United States, who shall be engaged in the slave trade in the manner and with the intent

specified in the fourth and fifth sections of the act, shall be adjudged a pirate, and, on conviction of the offence, shall suffer death.

The indictment charged the offence under both branches of the act—(1) That the prisoner being one of the ship's company of the brig Julia Moulton, owned in whole or in part by a citizen or citizens of the United States, did piratically, etc., confine and detain 500 negroes on board said vessel, etc., with intent, etc., contrary to the statutes. (2) That the prisoner, being a citizen of the United States, and one of the ship's company of the brig Julia Moulton—the said brig being a foreign vessel engaged in the slave trade—did piratically, etc., detain, etc., 500 negroes on board said vessel, with intent, etc.

On the trial evidence was given on behalf of the government of the purchase of the brig Julia Moulton by the prisoner at Boston, from the American owners, previous to the equipment and fitting out at the port of New York for the voyage to the coast of Africa; also that the ship's papers were taken out at the custom-house at Boston, and afterwards at New York, by him, or at his instance, and in his own name. The evidence was not entirely clear that the purchase of vessel was made for himself, or that he had furnished the money that was paid for her. In the ship's papers, which had been produced by the government, the prisoner was described as a citizen of the United States, and he had taken the usual custom-house oath that he was such citizen. The evidence was full that the prisoner, as master of the vessel, sailed from the port of New York to the coast of Africa, took in a cargo of negroes, and from thence sailed to the Island of Cuba, where the cargo was landed, and the ship burned by his orders. Considerable evidence was given on the part of the prisoner tending to show that he was a subject of the kingdom of Hanover, in which he was born, and not a citizen of the United States.

In submitting the case to the jury the court stated that the government must prove either that the prisoner, at the time he was engaged in the illegal traffic, was a citizen of the United States, or that the vessel which he commanded was owned, in whole or in part, by a citizen or citizens of the United States, in order to justify them in finding him guilty. And these two questions were accordingly left to the jury, for their finding, after calling their attention to the evidence that had been given bearing upon them. The jury found a general verdict of guilty.

The prisoner's counsel now moves for a new trial, among others, upon the ground that he was taken by surprise in the direction given to the case by the charge of the court in submitting to the jury the question as to the national character of the vessel, or, to be more particular, the question wheth-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

er the interest of the American owners in the vessel had passed to the prisoner by the purchase of her at Boston.

The argument of the counsel is, that the purchase of the vessel by the prisoner has been proved on behalf of the government; and assuming, therefore, that it was not to be made a matter of controversy in the progress of the trial, but not to be taken as an admitted fact, he had omitted to examine witnesses and to produce evidence, which, if his attention had been turned to the point, or he had deemed it material, would have placed the fact beyond all reasonable doubt; that having taken it for granted, from the course of the trial, that the purchase and transfer of the vessel from the American owners passed from them, and vested in the prisoner a complete title, the only question in controversy left in this part of the case, as the counsel supposed, was the question of citizenship.

We are satisfied, on a review of the case, that those considerations, suggested by the counsel for the prisoner, are entitled to weight, and that the course of the trial may very well have misled him in respect to the point mentioned, in conducting the defence.

The government having begun the trial by giving evidence tending to prove the purchase of the vessel by the prisoner from the American owners, and thus making that fact a part of its case, whether material or not, so far as the prosecution was concerned, it was natural for the counsel for the prisoner to infer that, unless he himself chose to controvert it, it would be regarded as admitted, or, at least, not a matter of controversy to the future progress of the trial. The somewhat imperfect state of the evidence in respect to this purchase, as given on the trial, led to the impression at the time, that whatever might be our opinion as to the fact, the question was one that belonged to the jury, and it was submitted accordingly. We are satisfied, from the view already presented, that in this respect we are mistaken; and that instead of submitting the fact to the jury, as the government had made it a part of its case, and the fact not being controverted by the prisoner, the court should have regarded it as undisputed, and confined the question at issue to the citizenship of the prisoner. The contrary view taken by the court was not only calculated to mislead the counsel for the defence, but, we think, from the course of the trial, and the evidence given on the part of the government, that there was error in submitting the question of the national character of the vessel to the jury at all, as open for their consideration.

The finding of guilty was general, and as the national character of the vessel was submitted to the jury, the verdict may have been influenced by the consideration of that question. There must, therefore, be a new trial.